UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------X
TIMOTHY BRODIE

       Plaintiffs,

  - against -

GLENDON FUHRMAN, 5325
CLARENDON ROAD REALTY CORP.,
THE CITY OF NEW YORK,
DETECTIVE FELIX COLON, JOHN
AND JANE DOES #1 THROUGH 10
BEING EMPLOYEES OF THE CITY OF
NEW YORK,

      Defendants.

---------------------------X

<u>MEMORANDUM AND ORDER</u>

Civil Action No.
07-CV-4212 (DGT)

Trager, J.:

    Plaintiff Timothy Brodie ("Brodie" or "plaintiff") brings
this action against the City of New York ("the City"), Detective
Felix Colon ("Colon") and New York City employees John and Jane
Does #1-10,[1] alleging claims of false arrest, false imprisonment
and malicious prosecution pursuant to 42 U.S.C. § 1983 and the
Fourth and Fourteenth Amendments to the United States
Constitution.  Plaintiff also asserts state claims for false
arrest, false imprisonment, intentional infliction of emotional

_____

    [1] Plaintiff has failed to serve or identify the John and
Jane Does listed as defendants in the complaint.  As such, the
claims against John and Jane Does 1-10 are dismissed without
prejudice.  <u>See</u> <u>Pierre v. City of N.Y.</u>, No. 05-CV-5018, 2007 WL
2403573, at *1 (E.D.N.Y. Aug. 17, 2007).

distress, negligent infliction of emotional distress and abuse of process pursuant to the laws of the State of New York. Defendants move for summary judgment pursuant to Rule 56(c) of the Federal Rules of Procedure.[2]  For the reasons stated below, defendants' motion is granted.

## Background

### (1)

### Plaintiff and Fuhrman's Relationship

Plaintiff and Glendon Fuhrman ("Fuhrman") lived and worked across the street from each other on Clarendon Road in Brooklyn, New York for approximately ten years.  Brodie Dep. at 61:13-15, 71:7; Fuhrman Dep. at 3:11-13.  Although plaintiff knew Fuhrman from seeing him around the neighborhood, plaintiff states that the two did not have any significant interactions prior to May 28, 2005.  Brodie Dep. at 64:18-19, 76:10-11.

At some point in May 2005, plaintiff's friend, who worked for the New York City Public School system, told plaintiff that Fuhrman had asked him for plaintiff's Social Security number and other private information.  Id. at 67:17-22.  According to

---

[2] On October 20, 2009, plaintiff notified this Court that he had a reached a settlement with Glendon Fuhrman and 5325 Clarendon Road Realty Corporation, who were originally included as defendants in this lawsuit.

Fuhrman, he needed plaintiff's private information to help Ralph

Buonomo ("Buonomo"), plaintiff's landlord, sue and evict

plaintiff for failing to pay his rent.  Fuhrman Dep. at 121:18-

19, 132:22-253, 138:10-13.  In order to help Buonomo, Fuhrman

claims that he accompanied Buonomo to a landlord-tenant

proceeding against plaintiff, where plaintiff requested that

Fuhrman leave the courtroom.[3]  Id. at 141:3-6, 100:25-101:14,

147:7-25, 148: 1-2, 11-12, 17-18.

However, plaintiff makes no mention of this housing court

incident in his deposition or motion papers.  Furthermore,

plaintiff states that he did not know why Fuhrman was trying to

obtain his personal information given that they had not

previously interacted and did not have a relationship.  Brodie

Dep. at 70:4-25.

**(2)**

**The May 28, 2005 Incident**

On May 28, 2005, plaintiff saw Fuhrman on the street and

confronted him about his alleged efforts to obtain plaintiff's

personal information.  Pl.'s Rule 56.1 Stmt. ¶ 54; Brodie Dep. at

69:19-25; Fuhrman Dep. at 96:6-11.  Plaintiff told Fuhrman to

---

[3] Although it is unclear when this alleged proceeding
occurred, Fuhrman implies in his deposition that it took place
prior to plaintiff and Fuhrman's May 28, 2005 altercation.

"mind [his] business." Id. As plaintiff was walking away from the encounter, Fuhrman urged plaintiff to hit him. Brodie Dep. at 76:2-6. In response, plaintiff walked away, responding that Fuhrman was not "worth it." Id. at 76:5-6; Fuhrman Dep. at 97:15-16. Fuhrman claims that in an effort to antagonize plaintiff, Fuhrman "taunted" plaintiff as plaintiff walked away, stating multiple times, "Have a nice day, Timothy." Fuhrman Dep. at 98:13, 97:19-23.

Immediately after this incident, Fuhrman called 911, and a police officer, accompanied by Fuhrman, arrived at plaintiff's house. Brodie Dep. at 96:1-7. Plaintiff requested that the officer ask Fuhrman to leave. Id. at 96:13-15. After Fuhrman left, the officer informed plaintiff that he would write a report regarding the earlier incident.[4] Id. at 98:1-2.

According to plaintiff, he had no further interactions with Fuhrman following this incident. Id. at 381:3-8. Plaintiff moved out of the neighborhood on June 30, 2005. Id.

---

[4] Plaintiff does not know if the officer filed a report because he never followed up with the officer. Brodie Dep. at 99:13-23. The record does not contain a police report from this incident.

## The August 11, 2005 Assault on Fuhrman

On August 11, 2005, Fuhrman fell asleep at his desk in his basement office located on Clarendon Road. Fuhrman Dep. at 78:19-20. Around midnight, he awoke to a man wielding a knife a foot away from his face.[5] Id. at 78:13, 80:2-12. When the assailant demanded money, Fuhrman informed him that there was no cash on the premises. Id. at 81:13-15. Fuhrman then attempted to push the assailant out of the way in order to run for the door. Id. at 81:20-24. In response, the assailant hit Fuhrman twice on the head, rendering him unconscious. Id. at 82:3-7.

Fuhrman later testified that the incident lasted about one to two minutes and that he could not remember if there were lights on during the attack. Id. at 83: 15-17, 84:19-22. He also stated that although he could see the face of his assailant, he could not see his clothing nor did he remember if the assailant was wearing a hat. Id. at 83:3-7, 84:6-8. According to Fuhrman, toward the middle of the assault, he began to think that the assailant was plaintiff. Id. at 161:21-25.

Fuhrman's injuries from the assault included two black eyes, cuts, and bruises on his ears, back, ribs and knee, and required

---

[5] According to Fuhrman, the knife belonged to him and was removed by the assailant from Fuhrman's car. Fuhrman Dep. at 91:5-8. Fuhrman claimed that the knife was returned to his car after the assault, where he found it when he was discharged from the hospital. Id. at 106:18-23.

him to be hospitalized.  _Id._ at 165:9-13.  Additionally, Fuhrman stated that he had some loss of memory as a result of being unconscious.  _Id._ at 24:10-17.

After the attack, Fuhrman was taken to the hospital, where he spoke to two police officers.  _Id._ at 48:12-16.  According to Fuhrman, he told the officers that he had been assaulted, gave them the address of the location of the assault and identified his attacker as Timothy Brodie.[6]  _Id._ at 47:4, 48:10-14.  After the fact, Fuhrman could not remember how much detail he provided the officers with and whether he told the officers about his prior history with plaintiff.  _Id._ at 49:4-10, 18-21. Additionally, he did not give the officers an extensive physical description of plaintiff and merely described him as an "African American, taller than [himself]."  _Id._ at 49:13-14.  It is unclear from the record whether the officers filed a report following their interview of Fuhrman.[7]

On or about the day after Fuhrman's release from the hospital, Fuhrman's daughter photographed his injuries on her cell phone.  _Id._ at 163:6-25; _see also_ Defs.' Ex. I.

---

[6] Plaintiff disputes that Fuhrman provided the officers with plaintiff's name and physical description.  Pl.'s Rule 56.1 Stmt. ¶ 19.  However, plaintiff brings no evidence of this. Additionally, it is unlikely that plaintiff would have personal knowledge of what Fuhrman told the officers while in the hospital.

[7] No report is provided in the record.

## Colon's Involvement in the Criminal Investigation

### a. Colon's Investigation

On August 22, 2005, Fuhrman visited the 67th Precinct in Brooklyn to report the August 11 assault, and the case was assigned to Detective Colon. Defs. Ex. G. On August 23, 2005, Colon and Fuhrman spoke for the first time on the telephone. Colon Dep. at 12:13-15; Defs. Ex. J. During this conversation, Fuhrman identified plaintiff as his assailant. Id. Fuhrman also provided Colon with the photographs taken by his daughter.[8]

At this point, plaintiff and Colon's accounts of the events diverge. However, although the facts are presented here in the light most favorable to plaintiff, it must be noted at the outset that plaintiff makes numerous assertions that lack any factual basis.

Plaintiff alleges that in the two months between Colon's initial interview of Fuhrman on August 23, 2005 and plaintiff's arrest on October 17, 2005, Colon failed to conduct any investigation at all. Pl.'s Rule 56.1 Stmt. ¶ 26. However, plaintiff fails to bring any evidence of this.[9] Quite the

---

[8] Although it is clear from the record that Fuhrman gave these photographs to Colon at some point during the investigation, it is unclear when he did so. Fuhrman Dep. at 165:4.

[9] Indeed, it is unclear how plaintiff would have personal knowledge of the depth of an NYPD detective's investigation.

contrary, Colon claims that he conducted an extensive
investigation of the August 11 assault. Colon Dep. at 13:2-3.
As part of his investigation, Colon states that he searched for
plaintiff in the New York City Police Department ("NYPD")
database,[10] visited the area of the crime,[11] canvassed the
neighborhood for witnesses, met with Fuhrman and attempted to
call plaintiff multiple times. Id. at 11:17-18, 13:5-8, 17-21,
14:19-25, 24:24-25, 25:2-7.

As evidence of his investigation, Colon points to the
multiple police reports that he filed between August 23, 2005 and
October 17, 2005. According to one of his reports, dated
September 3, 2005, an anonymous caller provided Colon with
plaintiff's cell phone number and location. Defs. Ex. J.

_____

[10] Despite various attempts to locate plaintiff's records in
the NYPD database, Colon states that he was unable to do so
because he spelled "Brodie" incorrectly. Plaintiff, however,
claims that Colon knew how to spell his name from the time the
investigation was opened in late August. Pl.'s Rule 56.1 Stmt.
¶ 55. Plaintiff points to reports filed by Colon, dated August
23, September 3, September 5, and September 25, 2005, in which,
according to plaintiff, "Brodie" is spelled correctly. However,
although "Brodie" is spelled correctly in the September 25
report, it is spelled incorrectly in the August 23 and September
3 report and does not appear at all in the September 5 report.
See Defs. Ex. J. Additionally, in a police report filed by Colon
on October 10, 2005, Colon noted that after several prior
attempts, he finally spelled plaintiff's name correctly and found
his records. Id. Plaintiff brings no evidence that this October
10, 2005 report, describing Colon's efforts to locate plaintiff
in the database, was inaccurate.

[11] Colon admits that he never visited Fuhrman's basement
office to physically investigate the location of the actual
assault. Colon Dep. at 25:14-19.

Another report, dated September 5, 2005, notes that Colon called plaintiff's cell phone and left a message for him.  Defs. Ex. J. Similarly, a report dated September 25, 2005 notes that plaintiff called Colon and that during this call, Colon informed plaintiff that he needed to speak to him about a case involving Fuhrman. Id.  According to the report, plaintiff told Colon that he could not come into the precinct because he was on medication and would call Colon back to arrange a meeting.   Id.

Plaintiff, however, disputes that Colon called him on September 5, 2005 and claims that his cell phone records indicate that Colon did not call him on this date.  Pl.'s Rule 56.1 Stmt. ¶ 59; Pl.'s Aff. ¶ 2; Pl.'s Ex. A.  Additionally, plaintiff claims that he did not call Colon on September 25, 2005 and contends that Colon fabricated the police report documenting this phone call.  Pl.'s Rule 56.1 Stmt. ¶ 26, 60.  However, absent his conclusory statements, plaintiff fails to bring any evidence that Colon did not call him on September 25 or that Colon lied in the police report.

Plaintiff also disputes that an anonymous caller provided Colon with plaintiff's phone number.  Id. at ¶ 27.  Instead, plaintiff contends that Fuhrman illegally obtained information about plaintiff and relayed it to Colon.  Id.  According to plaintiff, Fuhrman and Colon agreed to lie that the information about plaintiff was received through an anonymous phone call in

order to hide Fuhrman's role in the investigation and to make it appear like he was conducting an investigation. Id. at ¶ 58. Again, plaintiff fails to bring any facts or specific details to support this allegation.

**b. Colon's Interactions with Fuhrman**

As part of his investigation, Colon had several conversations with Fuhrman, both on the telephone and in person.[12] Colon Dep. at 11:9-18. According to Colon, Fuhrman showed up at the precinct multiple times, and as a result, Colon believed that he was "insane" or "nuts." Id. at 74:21-25. Colon "kind of didn't believe" Fuhrman's allegation against plaintiff and felt that Fuhrman kept returning to the precinct in order to "add fuel to the fire." Id. at 72:8-14; 74:2-4. Moreover, according to Colon, Fuhrman gave the impression that "he was . . . after Mr. Brodie." Id. at 73:2-3. However, despite these misgivings, Colon states that he did not have any communications with Fuhrman that led him to believe that he was not being truthful about the

---

[12] In his Rule 56.1 Statement, plaintiff disputes that Colon and Fuhrman met or spoke on the phone after their initial phone conversation on August 23, 2005. Pl.'s Rule 56.1 Stmt. ¶ 26. Despite this, plaintiff still points to Colon's statements about these meetings and conversations with Fuhrman as evidence that Colon did not believe Fuhrman's allegations. Id. at ¶ 19, 26. As such, this opinion will assume that plaintiff does not actually dispute that Colon and Fuhrman met and spoke on multiple occasions.

assault.[13]  Id. at 92:9-14.  During their meetings and phone
calls, Fuhrman never told Colon about the May 28, 2005
altercation and merely informed Colon that plaintiff had
threatened him in the past.  Id. at 71:9-11, 24-25.


### (5)

### Plaintiff's Arrest

On October 13, 2005, Colon called plaintiff and arranged a
meeting at the 67th precinct for October 17, 2005.  Defs. Rule
56.1 Stmt. ¶ 9.  During this phone call, Colon asked plaintiff if
he knew Fuhrman, and plaintiff answered affirmatively.  Brodie
Dep. at 126:14-15.  On October 17, plaintiff met with Colon at
the precinct.  Id. at 144:2-4.  During this visit, Colon told
plaintiff that he was investigating an assault against Fuhrman
that occurred on August 11, 2005 and showed plaintiff black and
white photographs of Fuhrman's injuries from the assault.  Id. at
148:1-5.  Although plaintiff again affirmed that he knew Fuhrman,

---

[13] Specifically, in his deposition, Colon stated:

I mean, what he told me, from the pictures that I saw
and everything, it was like believable.  I could
believe it.  I mean, that's why I made the arrest and
everything.  He was bringing me some evidence and
telling me straight out, "I know who did it.  This is
his name."  That's what I basically based this whole
case on.  That's the only thing I could base my case
on.  Colon Dep. 88: 11-21; see also id. at 73:15-20.

he did not tell Colon about any of his interactions with Fuhrman prior to the August 11 assault, including the May 28, 2005 altercation.  Id. at 159:14-25; Colon Dep. at 71:6-15.

According to plaintiff, after telling plaintiff about Fuhrman's assault, Colon told plaintiff that he thought Fuhrman was "unreliable" and "nuts" because he visited the precinct multiple times and repeatedly changed his story of the assault. Brodie Dep. at 154:2-15, 155:21-23.  Plaintiff claims that Colon then told plaintiff that he was being pressured by his boss to arrest someone for Fuhrman's assault and stated, "[Y]ou're it." Id. at 148:13-16; 162:11.  Colon, however, denies that he told plaintiff this and also denies that he was pressured to make an arrest in the Fuhrman case.  Colon Dep. at 70:22-25, 71:2-5.

After Colon informed plaintiff that he would be arrested for Fuhrman's assault, plaintiff asked Colon when the assault had occurred.  Brodie Dep. at 148:20, 149:13-15; Colon Dep. at 76:24-25, 77:11.  In response, Colon merely told plaintiff the date, but not the time of day, despite plaintiff's repeated requests for this information.  Id.  Plaintiff informed Colon that he was at work on the date of the assault and requested that Colon allow him to prove this by having a work schedule faxed to the precinct.  Brodie Dep. at 148:23-149:1.  Colon, however, dismissed this idea and told plaintiff to discuss any alibis with the District Attorney's Office.  Colon Dep. at 77:17-20.

Plaintiff was then arrested that same day and charged with burglary, robbery and assault. Defs. Rule 56.1 Stmt. ¶ 17. On October 21, 2005, Fuhrman signed a sworn deposition incriminating plaintiff as his assailant. Defs. Ex. K. On June 26, 2007, the Kings County Criminal Court dismissed the charges against plaintiff on speedy trial grounds. Defs. Ex. L.

## Discussion

### (1)

### False Arrest

Pursuant to 42 U.S.C. § 1983 and New York state law, plaintiff claims that Colon falsely arrested him during his October 17, 2010 visit to the precinct. "Claims for false arrest . . . brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are substantially the same as claims for false arrest . . . under state law." Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003) (internal citations and quotations omitted). Under New York state law, to prevail on a claim of false arrest a plaintiff must prove four elements: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the

confinement was not otherwise privileged.[14]  See Broughton v.

State, 37 N.Y.2d 451, 456, 335 N.E.2d 310, 314, 373 N.Y.S.2d 87,

93 (1975); Johnson v. Kings County Dist. Attorney's Office, 308

A.D. 2d 278, 285-86, 763 N.Y.S.2d 635, 641 (2d Dep't 2003).  "The

existence of probable cause to arrest constitutes justification

and 'is a complete defense to an action for false arrest.'"

Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (quoting Bernard

v. United States, 25 F.3d 98, 102 (2d Cir. 1994).  "[P]robable

cause to arrest exists when the officers have knowledge or

reasonably trustworthy information of facts and circumstances

that are sufficient to warrant a person of reasonable caution in

the belief that the person to be arrested has committed or is

committing a crime."  Id.  To determine probable cause, a court

does not consider the subjective thoughts of arresting officers.

Devenpeck v. Alford, 543 U.S. 146, 153 (2004).  Rather, the

probable cause inquiry is an objective one, which "depends upon

the reasonable conclusion to be drawn from the facts known to the

arresting officer at the time of the arrest."  Id. at 594.

The only issue in dispute here as to whether plaintiff's

arrest constitutes false arrest is the existence of probable

---

[14] Under New York law, false arrest and false imprisonment
have identical elements.  See Singer v. Fulton County Sheriff, 63
F.3d 110, 118 (2d Cir. 1995) (internal citations omitted).
Accordingly, this opinion refers to plaintiff's claims for false
arrest and false imprisonment as "false arrest" and will examine
them together.

cause.  Plaintiff claims that Colon lacked probable cause

because: (1) Fuhrman's overall veracity was in question;

(2) Colon failed to conduct a sufficient investigation prior to

arresting plaintiff; (3) Colon made the decision to arrest

plaintiff merely because he was under pressure from his superiors

to make an arrest in Fuhrman's case; and (4) Colon did not

investigate plaintiff's alibi.

## a. Fuhrman's Veracity

Plaintiff first claims that Fuhrman's overall credibility

was in question, thus vitiating Colon's probable cause to arrest

plaintiff.  Specifically, plaintiff contends that Fuhrman's

behavior such as his frequent visits to the precinct called his

veracity into question.[15]  Pl.'s Rule 56.1 Stmt. ¶ 29, 49.

However, Colon's reliance on Fuhrman's claims was sufficient to

---

[15] Plaintiff also contends that Fuhrman's claims about his
knife being used in the assault called into question his
credibility.  However, Colon claims that Fuhrman never told him
about the knife.  Colon Dep. at 50:12-22.

Additionally, plaintiff makes multiple references to an
incident when Colon saw someone who looked like Fuhrman changing
his clothing inside a bank lobby and wearing "something strange."
Id. at 60:17-25. ¶ 47; Pl.'s Mem. Law Opp'n Defs.' Mot. for Summ.
J. ("Pl.'s Opp'n") at 17.  Although plaintiff's exact argument
concerning this incident is unclear, it seems that he is
suggesting that the bank incident also raised questions as to
Fuhrman's credibility.  However, this argument does not add
appreciably to plaintiff's claim given that the bank incident was
unrelated in any way to Fuhrman's assault, Colon's investigation
or the instant case.

meet the probable cause standard.  Notably, "[a]n arresting
officer advised of a crime by a person who claims to be the
victim, and who has signed a complaint or information charging
someone with the crime, has probable cause to effect an arrest .
. . .").  <u>Singer v. Fulton County Sheriff</u>, 63 F.3d 110, 119 (2d
Cir. 1995).  Moreover, in general, "[t]he veracity of citizen
complaints who are the victims of the very crime they report to
the police is assumed."  <u>Miloslavsky v. AES Eng'g Soc'y, Inc.</u>,
808 F. Supp. 351, 355 (S.D.N.Y. 1992), <u>aff'd</u>, 993 F.2d 1534 (2d
Cir. 1993), <u>cert. denied</u>, 510 U.S. 817 (1993).

There are circumstances, however, when a victim's veracity
can be called into question.  <u>Singer</u>, 63 F.3d at 119.  For
example, when, as here, "there exists a prior relationship
between the victim and the accused that gives rise to a motive
for a false accusation . . . and [this relationship] is known to
the arresting officer . . . the complaint alone may not
constitute probable cause; the officer may need to investigate
further."  <u>Mistretta v. Prokesch</u>, 5 F. Supp.2d 128, 133 (E.D.N.Y.
1998).  However, even if a prior relationship exists, when a
"victim precisely identifies the alleged perpetrator of a crime
and there is independent corroborative evidence to support at
least some of the victim's assertions, a person of reasonable
caution is warranted in believing that an offense has been
committed by the alleged perpetrator."  <u>Bullard v. City of New</u>

York, 240 F. Supp. 2d 292, 298 (S.D.N.Y. 2003). "A variety of circumstances might corroborate a putative victim's veracity . . . . . such . . . as (1) the officer's observation of the putative victim's physical injuries, (2) the level of detail and consistency in the putative victim's description of events, [or] (3) the putative victim's identification of the plaintiff by name and physical description . . . ." Williams v. Schultz, No. 06-CV-1104, 2008 WL 4635383, at *9 (N.D.N.Y. Oct. 16, 2008) (citing Curley v. Vill. of Suffern, 268 F.3d 65, 70 (2d Cir. 2001); Jaegly v. Couch, 439 F.3d 149, 151-53 (2d Cir. 2006)); see also Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) (holding that there is probable cause to arrest when a victim identifies his assailant by name and provides evidence of his or her physical injuries).

Given Fuhrman's behavior and prior relationship with plaintiff, his overall veracity was certainly in question.[16] Indeed, Colon acknowledged this in his deposition, stating that he questioned whether Fuhrman was telling the truth because of Fuhrman's frequent visits to the precinct and apparent efforts to "add fuel to the fire." Colon Dep. at 72:8-14, 74:2-9, 75:10-15. Yet, despite Colon's questions as to Furhman's credibility,

---

[16] Although Colon was not familiar with the May 28, 2005 incident, he was aware of Fuhrman and plaintiff's tense history. As stated above, Fuhrman told him that plaintiff had threatened him in the past. Colon Dep. at 71:9-11, 24-25.

17

Fuhrman provided sufficient corroborative evidence to support his allegations against plaintiff. Specifically, in his meetings with Colon, Fuhrman identified plaintiff as his assailant and provided photographs of his injuries, which was sufficient to constitute probable cause.[17]

Additionally, Colon met with plaintiff prior to arresting him and questioned him about Fuhrman's assault. Brodie Dep. at 148:1-16. While Colon's interrogation of plaintiff did not confirm Fuhrman's allegations, it certainly did not indicate to Colon that Fuhrman's claims were false. Essentially, plaintiff failed to persuade Colon that he was a victim of false accusations, thus not undermining the probable cause that Colon had for proceeding with the arrest.

It should be noted that Fuhrman did not sign a complaint against plaintiff until four days after plaintiff's arrest. While an unsigned complaint can cast doubts on the existence of probable cause, see Sheikh v. City of N.Y. Police Dep't, No. 03-CV-6326, 2008 WL 5146645, at *6 (E.D.N.Y. Dec. 5, 2008), a police report is still sufficient to establish probable cause when it specifically identifies the victim and arrestee by name. See, e.g., Stokes v. City of New York, No. 05-CV-0007, 2007 WL 1300983, at *5 (E.D.N.Y. May 3, 2007) (noting that the Second

_____

[17] Colon specifically states in his deposition that he considered the photographs in making the decision to arrest plaintiff. Colon Dep. at 73: 24-25-74: 2-4.

18

Circuit and other courts have found probable cause to exist where the police received information directly from a purported victim of a crime without a formal written complaint).  Here, even though Fuhrman had not yet signed a complaint at the time of plaintiff's arrest, he nevertheless specifically identified plaintiff as his assailant in an official police report filed on August 23, 2005, thus corroborating his allegations and creating probable cause.  Defs. Ex. J.

**b. Colon's Investigation**

Plaintiff argues that Colon failed to conduct a sufficient investigation prior to arresting plaintiff and suggests that the two-month gap between Fuhrman's initial report of the assault and plaintiff's arrest indicates that Colon was not actively pursuing the case.  Pl.'s Opp'n at 22.  However, as is clear from the record, during this two month period, Colon did not ignore Fuhrman's complaint but rather was investigating the events underlying Fuhrman's complaint by searching for plaintiff in the NYPD database, visiting the area of the crime, canvassing the neighborhood for witnesses and meeting with Fuhrman multiple times.  Additionally, as stated above, Colon also met with plaintiff and questioned him about Fuhrman's assault prior to arresting him.  Brodie Dep. at 148:1-16.  While Colon's overall investigation did not confirm with absolute certainty that

plaintiff committed the assault, it also did not suggest otherwise nor did it indicate that the assault never occurred. Thus, Colon's investigatory efforts bolstered Fuhrman's claims and further support a finding of probable cause.  See Mistretta, 5 F. Supp. 2d at 135 (noting that when there is doubt as to a victim's veracity, an officer's independent investigation establishes probable cause); cf. Cornett v. Brown, No. 04-CV-0754, 2007 WL 2743485, at *6 (E.D.N.Y. Sept. 17, 2007)(holding that there was no probable cause when there was no "evidence in the record that the police investigated the events underlying the complaint that were alleged to constitute a crime"); Bullard, 240 F. Supp. 2d at 298 (holding that there was no probable cause when officers did nothing to investigate or corroborate the victim's allegations).

## c. Colon's Motivation for Arresting Plaintiff

Plaintiff also argues that Colon arrested him merely because he was under pressure from his superiors to make an arrest in Fuhrman's case.  Specifically, plaintiff claims that upon his arrest, Colon told plaintiff that he needed to arrest someone and stated: "You're it."  Brodie Dep. at 148:13-16; 162:11.  However, even assuming this fact is indeed true, Colon's subjective thoughts at the time of arrest are irrelevant to a determination of probable cause.  See Devenpeck, 543 U.S. at 153.  As

established above, on an objective level, there was probable cause to arrest plaintiff based on Fuhrman's statements, the photographs and Colon's investigation efforts.

**d. Plaintiff's Alibi**

Finally, plaintiff contends that Colon did not have probable cause because he failed to investigate plaintiff's alibi. However, an officer is not required "to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest." Jocks, 316 F.3d at 135-36; see also Panetta v. Crowley, 460 F.3d 388, 395-96 (2d Cir. 2006) ("The fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause.") (internal citations and quotation marks omitted). "Once a police officer has probable cause, he need not explore 'every theoretically plausible claim of innocence before making an arrest.'" Mistretta, 5 F. Supp. 2d at 135 (quoting Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997)). Therefore, although Colon could have conducted a more thorough investigation that might have exculpated plaintiff, he had no duty to do so. See Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989) (noting that an

officer's duty "is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence").

Thus, Colon had probable cause to arrest plaintiff, and accordingly, plaintiff's claims for false arrest fail.


**(2)**

**Qualified Immunity**

Even assuming arguendo that Colon did not have probable cause to arrest plaintiff, Colon is entitled to qualified immunity as to plaintiff's false arrest claims. "The doctrine of qualified or good faith immunity shields police officers from being subject to personal liability for damages." Ricciuti, 124 F.3d at 127. This protection extends to conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

In the absence of probable cause, an arresting officer will still be entitled to qualified immunity if he or she can show that there was "arguable probable cause" for the arrest. Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). "Arguable

probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Id. (quoting Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991)). To determine the existence of arguable probable cause, the relevant inquiry is the officer's knowledge at the time of the arrest. Id. at 747-48.

For the same reasons that probable cause existed here to arrest plaintiff, the arguable probable cause standard was met as well. It is clear that police officers of reasonable competence could disagree as to whether there was probable cause to believe that plaintiff had assaulted Fuhrman. As discussed above, officers are usually entitled to rely on statements by the alleged victim of a crime. See Singer, 63 F.3d at 119. Even assuming there was a question as to Fuhrman's credibility, Colon had sufficient corroborative evidence, such as Fuhrman's photographs and identification of plaintiff as the assailant as well as his own results and impressions from his investigation. See, e.g., Rae v. County of Suffolk, No. 07-CV-2738, 2010 WL 768720, at *7 (E.D.N.Y. Mar. 5, 2010) (holding that victim's injuries and accusations against plaintiff were sufficient to establish arguable probable cause to arrest plaintiff and thus conferred qualified immunity to police officers); Donovan v.

Briggs, 250 F. Supp. 2d 242, 256 (W.D.N.Y. 2003) (holding that victim's statement, demeanor and corroborating physical evidence created arguable probable cause, thus entitling officers to qualified immunity).  Therefore, at a minimum, plaintiff's claims of false arrest are dismissed based upon the defense of qualified immunity.


## (3)

## Malicious Prosecution

Plaintiff also appears to make claims of malicious prosecution under § 1983 and state law.  "[T]he tort of malicious prosecution protects the personal interest of freedom from unjustifiable litigation." Weintraub v. Bd. of Educ. of New York, 423 F. Supp. 2d 38, 59 (E.D.N.Y. 2006)(internal quotation marks omitted).  Like false arrest, federal courts must look to state law when deciding claims of malicious prosecution.  See Alicea v. City of N.Y,, No. 04-CV-1243, 2005 WL 3071274, at *6 (S.D.N.Y. Nov. 15, 2005) (quoting Conway v. Mt. Kisco, 750 F.2d 205, 214 (2d Cir. 1984)).  Under New York law, a malicious prosecution claim requires the plaintiff to prove that: (1) the defendant initiated a prosecution against the plaintiff; (2) the defendant lacked probable cause to believe the proceeding could succeed; (3) the defendant acted with malice; and (4) the

prosecution was terminated in the plaintiff's favor. Rohman v. N.Y.C. Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000). Additionally, in order to succeed on a § 1983 malicious prosecution claim, plaintiff must demonstrate a sufficient post-arraignment liberty restraint to implicate his Fourth Amendment rights. Washington v. County of Rockland, 373 F.3d 310, 316 (2d Cir. 2004).

Plaintiff does not allege malicious prosecution against Colon in his complaint or motion papers. However, even though plaintiff does not explicitly state a claim for malicious prosecution against Colon, such a claim can be inferred from plaintiff's allegations against Colon.[18] Plaintiff's most concrete allegation of malicious prosecution is that Colon removed exculpatory documents from the police file on Fuhrman's assault prior to giving it to the Kings County District Attorney's Office. Pl.'s Rule 56.1 Stmt. ¶ 25; Pl.'s Opp'n at 21. Plaintiff essentially implies that by removing these exculpatory documents, Colon facilitated "unjustifiable litigation" against plaintiff, thus implicating the tort of malicious prosecution. Weintraub, 423 F. Supp. 2d at 59. As such, it is necessary to address claims of malicious prosecution against Colon.

---

[18] Indeed, defendants assume that plaintiff has raised a claim of malicious prosecution against Colon. See Defs.' Mem. Law in Supp. Summ. J. at 9.

However, plaintiff's malicious prosecution claims are without merit because he fails to present any evidence to support his assertion that Colon removed exonerating evidence from his file. As discussed above, Colon had probable cause to believe that a proceeding against plaintiff could succeed at the time of plaintiff's arrest. The existence of probable cause at the time of arrest is enough to defeat a claim of malicious prosecution,"unless a jury might find that between the arrests and the prosecution the authorities became aware of evidence exonerating the accused." <u>Collom v. Inc. Vill. of Freeport, N.Y.</u>, 691 F. Supp. 637, 640 (E.D.N.Y. 1988). Yet, plaintiff has not presented any evidence that Colon later became aware of exonerating facts at the time of plaintiff's arraignment. In fact, there is absolutely no evidence provided that exonerating documents even existed or that Colon removed such documents from the file prior to plaintiff's criminal prosecution.[19] Therefore, plaintiff's malicious prosecution claims against Colon also fail.

**(4)**

**Municipal Liability**

Plaintiffs also assert a § 1983 claim pursuant to <u>Monell v.</u>

---

[19] Furthermore, it is unclear how plaintiff would have personal knowledge that Colon did this.

<u>Department of Social Servs.</u>, 436 U.S. 658, 691 (1978), against

the City of New York.[20]  Under <u>Monell</u>, "[i]n order to impose

§ 1983 liability upon a municipality, a plaintiff must

demonstrate that any constitutional harm suffered was the result

of a municipal policy or custom."  <u>Sorlucco v. N.Y. City Police</u>

<u>Dep't</u>, 971 F.2d 864, 870 (2d Cir. 1992) (citing <u>Monell</u>, 436 U.S.

at 690-91).  However, "[t]he policy or custom need not be

memorialized in a specific rule or regulation."  <u>Kern v. City of</u>

<u>Rochester</u>, 93 F.3d 38, 44 (2d Cir. 1996).  A policy, custom, or

practice of the municipal entity may be inferred where "the

municipality so failed to train its employees as to display a

deliberate indifference to the constitutional rights of those

within its jurisdiction."  <u>Patterson v. County of Oneida, N.Y.</u>,

375 F.3d 206, 226 (2d Cir. 2004) (internal quotation marks

omitted).  However, a municipal entity may only be held liable

where the entity itself commits a wrong, and "a municipality

cannot be held liable under § 1983 on a respondeat superior

theory."  <u>Monell</u>, 436 U.S. at 691.

Because, as established above, there was no constitutional

violation committed against plaintiff, <u>see</u> <u>supra</u>, no Monell claim

can lie against the City pursuant to § 1983.  <u>See, e.g.</u>, <u>Segal v.</u>

---

[20] Plaintiff does not specify that he is asserting a § 1983
claim pursuant to <u>Monell</u>.  However, plaintiff includes the City
as a defendant in his complaint, and in order to establish
municipal liability, it is necessary to follow the standard set
forth in <u>Monell</u>.

<u>City of N.Y.</u>, 459 F.3d 207, 219 (2d Cir. 2006) (noting that there must be an underlying constitutional violation to support a <u>Monell</u> claim).  Moreover, plaintiff has not produced any evidence showing that any of the alleged constitutional violations were a result of a municipal policy or custom.  Indeed, plaintiff specifically testified that he is unaware of any policy of the City of New York that caused the violation of his constitutional rights and did not dispute this fact in his Rule 56.1 statement. Brodie Dep. at 265:8-11; Pl.'s Rule 56.1 Stmt. ¶ 20.  Therefore, the § 1983 claims against the City also fail.


## (5)

### Plaintiff's Remaining State Law Claims

If a district court dismisses all claims over which it has original jurisdiction, it may in its discretion decline to exercise supplemental jurisdiction over state law claims.  28 U.S.C. § 1367(c)(3); <u>Tops Mkts., Inc. v. Quality Mkts., Inc.</u>, 142 F.3d 90, 102-03 (2d Cir. 1998).  Plaintiff's claims for abuse of process, intentional infliction of emotional distress and negligent infliction of emotional distress all arise under state law.  Consequently, because plaintiff's § 1983 claims do not survive summary judgment, these state law claims are dismissed without prejudice.  However, because false arrest and malicious

prosecution claims brought under § 1983 are governed by state law, plaintiff's state law claims for false arrest and malicious prosecution are dismissed with prejudice.  See Jocks, 316 F.3d at 134.


## Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted.  Plaintiff's federal and state claims for false arrest and malicious prosecution are dismissed with prejudice.  Plaintiff's state law claims for abuse of process, intentional infliction of emotional distress and negligent infliction of emotional distress are dismissed without prejudice. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.


Dated:  Brooklyn, New York
        March 29, 2010


                              SO ORDERED:


                              _____/s/_____
                              David G. Trager
                              United States District Judge